UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BRIDGETTE LENHARDT,

  Plaintiff,

  v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

  Defendant.

CIVIL ACTION NO. 3:20-cv-01656

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Bridgette Lenhardt, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

I. BACKGROUND

On November 20, 2016, Lenhardt filed a claim for disability insurance benefits, originally asserting a disability onset date of May 31, 2008. She subsequently amended her alleged onset date to January 1, 2010. Her claim was initially denied by state agency reviewers on June 1, 2017. The plaintiff then requested an administrative hearing.

A video hearing was subsequently held on May 9, 2019, before an administrative law judge, Lawrence Levey (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Tricia Muth. The plaintiff was represented by counsel at the hearing.

On May 31, 2019, the ALJ denied Lenhardt's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Lenhardt was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Lenhardt had not engaged in substantial gainful activity during the period from her alleged disability onset date, January 1, 2010, through her date last

insured, March 31, 2014.[2] At step two, the ALJ found that Lenhardt had the severe impairments of: supraventricular tachycardia, mitral valve prolapse, hypertension, sarcoidosis, psoriatic arthritis, obesity, and obstructive sleep apnea. At step three, the ALJ found that Lenhardt did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Lenhardt's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that, at the time of her date last insured, Lenhardt had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[3] with the following limitations:

> [S]he could occasionally balance, stoop, and climb ramps or stairs; and was precluded from kneeling, crouching, crawling, and climbing [ladders, ropes, or scaffolds],[4] from concentrated exposure to temperature

---

[2] *See generally* 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130.
[3] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).
[4] The ALJ's decision articulates both a limitation to only occasional climbing of ramps or stairs and a limitation totally precluding her from
*(continued on next page)*

> extremes, excessive wetness, excessive humidity, and excessive vibration, and from ... all work related exposure to unprotected heights and hazardous machinery.

(Tr. 14.)

In making these factual findings regarding Lenhardt's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how he weighed the various medical opinions in the record. *See generally* 20 C.F.R. § 404.1527; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that, during the period between her alleged disability onset date and her date last insured, Lenhardt was unable to perform her past relevant work as actually and generally performed.

---

climbing ramps or stairs. Based on the evidence of record, including the hypothetical questions posed to the vocational expert at the administrative hearing, the latter is clearly a scrivener's error. The hypotheticals posed to the vocational expert included occasional climbing of ramps or stairs and a complete preclusion of climbing ladders, ropes, or scaffolds.

At step five, the ALJ concluded that, during the period between her alleged disability onset date and her date last insured, Lenhardt was capable of performing other jobs that exist in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Lenhardt was capable of performing the requirements of representative occupations such as small parts assembler, DOT # 706.684-022, inspector / hand packager, DOT # 559.687-074, and mail clerk, DOT # 209.687-026. Based on this finding, the ALJ concluded that Lenhardt was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on July 16, 2020, making the ALJ's May 2019 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on September 11, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits administrative decisions).

Lenhardt asserts on appeal that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of her treating physician, Kim Norville, M.D., and a state agency medical consultant, James Butcofski, M.D.[5]

### A. Treating Physician Opinions

The plaintiff contends that the ALJ erred in his evaluation of the

---

[5] We note that the plaintiff's brief has identified additional issues on appeal, but these issues are all contingent upon a ruling in favor of the plaintiff with respect to the ALJ's evaluation of medical opinions. The plaintiff contends that the ALJ erred in excluding certain non-exertional limitations based on Dr. Norville's opinion, and that the ALJ erred in finding at step five that Lenhardt could do work that exists in significant numbers in the national economy based on vocational expert testimony in response to a hypothetical question that did not incorporate these non-exertional limitations.

opinions of her treating physician, Dr. Norville. The plaintiff contends that the ALJ erred in assigning "little weight" to Dr. Norville's opinions with respect to certain functional limitations, any one of which would have been dispositive of Lenhardt's ability to perform any work if accepted and incorporated into her RFC.

To be a "medical opinion" entitled to "controlling weight" an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(a)(2), (c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2.[6] Under the Social Security regulations applicable to this case, a "treating source" was defined as a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. As to what constitutes an "ongoing treatment relationship," the regulation

---

[6] We note that the treating physician rule applicable in this case was subsequently eliminated by an amendment to the rules effective March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

*Id.*

If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in the case record, a treating source medical opinion is nevertheless generally entitled to deference. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4. Ordinarily, it will be afforded "great weight." *See id.* at *2; *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). *See generally* 20 C.F.R. § 404.1527(c) (detailing factors considered in evaluating weight given to a medical opinion).

Dr. Norville, one of Lenhardt's treating physicians, completed a medical source questionnaire on March 25, 2019—almost five years after Lenhardt's date last insured. In response to the questionnaire, Dr.

Norville opined that, due to pain, fatigue, diminished concentration or work pace, or a need to rest, Lenhardt would be "off task" more than 33% of the time during a typical workday. She opined that Lenhardt's medical conditions would cause her to be absent from work more than four days per month. She opined that Lenhardt could lift or carry *no* amount of weight at all, and that Lenhardt could sit, stand, or walk for a total of less than eight hours per workday.[7] (Tr. 1573–75.)

The ALJ considered and found Dr. Norville's opinions were "not supported" by the claimant's medical records, "wholly inconsistent" with the objective medical evidence, and inconsistent with the claimant's own statements in her previously filed function report. The ALJ also noted that Dr. Norville's opinion was provided on a form report, which courts have recognized are generally entitled to little weight.[8] Based on this, the

---

[7] We note that the vocational expert testified at Lenhardt's administrative hearing that employers will typically tolerate no more than 10% of time off-task, and no more than one day of absenteeism per month. (Tr. 59.) Moreover, the exertional limitations proposed by Dr. Norville would render Lenhardt incapable of performing even sedentary work, and the sit/stand/walk limitation she proposed would preclude Lenhardt from completing an 8-hour workday or a 40-hour workweek.

[8] *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

ALJ declined to afford Dr. Norville's opinions "controlling weight," assigning them "little weight" instead. Specifically, the ALJ stated:

> [T]he record does not support any of the limitations to which [Dr. Norville] opines, each of which appears designed to establish disability, rather than to accurately reflect the claimant's functioning during the relevant period. For example, the record includes virtually no evidence suggesting that he claimant's impairments so significantly impacted her ability to concentrate, persist, and maintain pace during the relevant period. Similarly, although the relevant period record reflects a degree of joint pain, it does not explicitly reflect debilitating standing and walking limitations, or any significant sitting limitation. Accordingly, the undersigned gave little weight to Dr. Norville's form report opinion, an opinion prepared five years after the expiration of the claimant's disability insured status and one which is wholly inconsistent with the objective evidence generated during the relevant period and is inconsistent also in a number of respects with the claimant's own allegations as set forth in her previously filed function report.

(Tr. 17–18 & n.1 (citation omitted).) Based on the foregoing, we find that the ALJ's decision declining to afford Dr. Norville's opinion controlling weight is supported by substantial evidence and was reached based upon a correct application of the relevant law.

Even though Dr. Norville's opinions are not entitled to controlling weight, her opinions are nevertheless relevant evidence that must be considered and weighed by the ALJ. *See* 20 C.F.R. § 404.1527(d); *Ray v.*

*Astrue*, 649 F. Supp. 2d 391, 402 n.26 (E.D. Pa. 2009) ("Evidence that does not deserve great weight does not necessarily deserve no weight at all."). The following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). None of these factors may be omitted or disregarded by the ALJ in considering the weight of the opinion. *See Casillas v. Astrue*, 671 F. Supp. 2d 635, 643–44 (E.D. Pa. 2009) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(c) in determining what weight to give a medical opinion); *Waldron v. Astrue*, No. 1:07-CV-2040, 2008 WL 4452350, at *1 (M.D. Pa. Sept. 30, 2008) (same). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. § 404.1527(c)(6).

In determining the amount of weight to give Dr. Norville's opinions, the ALJ here clearly articulated his consideration of factors (1) and (2),

expressly describing Dr. Norville as the claimant's "treatment provider," whose report "indicated she has treated the claimant since 2008." (Tr. 17.) With respect to factors (3) and (4), the ALJ's decision clearly documents his consideration of the opinion's lack of support by medical evidence, and its inconsistency with the record as a whole. (*Id.*) There is no apparent indication in the record of Dr. Norville's medical specialization—her opinions are reported on a form that did not prompt her to provide that information. In addition to the enumerated factors, the ALJ considered the nature of the form report by which Dr. Norville's opinion was conveyed, which courts have recognized as "weak evidence" in this context.[9] No additional factors appear to have been brought to the ALJ's attention for consideration.

Accordingly, we find that there is substantial evidence in the administrative record to support the ALJ's findings that Dr. Norville's opinions that Lenhardt would be "off task" more than 33% of the time during a typical workday, that Lenhardt's medical conditions would cause her to be absent from work more than four days per month, that Lenhardt could lift or carry *no* amount of weight at all, and that Lenhardt

---

[9] *See supra* note 8.

could sit, stand, or walk for a total of less than eight hours per workday were entitled to "limited weight," and his determination of the weight given to Dr. Norville's opinions was adequately explained and otherwise based on a correct application of relevant law.

**B. State Agency Medical Consultant Opinions**

The plaintiff contends that the ALJ also erred in his evaluation of the opinions of a non-examining state agency medical consultant, Dr. Butcofski. She contends that the ALJ improperly credited Dr. Butcofski's medical opinions over those provided by Lenhardt's treating physician, Dr. Norville. The ALJ afforded Dr. Butcofski's opinion "partial weight."

An ALJ is required to evaluate every medical opinion in the record, regardless of the source of the opinion. 20 C.F.R. § 404.1527(c). Because state agency medical and psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," the ALJ must consider their findings as opinion evidence. Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *4; *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 n.2 (3d Cir. 2007). In determining the appropriate weight to which a non-treating source's medical opinion is entitled, the ALJ must consider the following factors: (1) whether the

medical source actually examined the claimant; (2) the degree to which the medical opinion is supported by relevant evidence; (3) the degree to which the medical opinion is consistent with the record as a whole; and (4) the medical source's specialization. 20 C.F.R. § 404.1527(c)(1) & (3)–(5). In addition, the ALJ must consider any other factors that tend to support or contradict the medical opinion, but only if brought to his attention. *See id.* § 404.1527(c)(6).

Generally, more weight will be given to the medical opinion of an examining source than to the medical opinion of a non-examining source. *Id.* § 404.1527(c)(1). In appropriate circumstances, however, the opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may be entitled to more weight than the opinion of an examining source, or even the opinion of a treating source. Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3.

> For example, the opinion of a State agency medical or psychological consultant . . . may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

*Id.*

Here, the ALJ considered and expressly discussed Dr. Butcofski's opinions that Lenhardt

> could perform work requiring light exertion, and occasional postural activity, except she was precluded from climbing ladders, ropes, or scaffolds. [Dr. Butcofski] added the claimant was obliged to avoid concentrated exposure to temperature extremes, wetness, humidity, vibration, pulmonary irritants, and hazards. These findings are generally consistent with the relevant portion of the evidentiary record, most of which was available to [Dr. Butcofski] at the time he made [h]is report. However, the undersigned, in an attempt to afford the claimant the benefit of any reasonable doubt, finds her impairments precluded her from kneeling, crouching, and crawling, and from work-place exposure to hazardous machinery and unprotected heights. Therefore, the undersigned gave partial weight to this opinion.

(Tr. 17 (citations omitted).) In determining the appropriate weight to give to the state agency medical consultant's opinions, the ALJ clearly articulated his consideration of factors (1), (2), and (3), and there is nothing in the record to indicate the specialization of the state agency medical consultant. (*See id.*) While not expressly addressed in his decision, the ALJ was undoubtedly aware that these agency consultants are considered "experts in the evaluation of medical issues in disability claims under the [Social Security] Act." Soc. Sec. Ruling 96-6p, 1996 WL

374180, at *2. Finally, the ALJ expressly addressed the fact that the state agency medical consultant rendered his opinion without the benefit of subsequently generated medical records, with the ALJ affording Lenhardt "the benefit of the doubt" and adopting somewhat more restrictive non-exertional limitations based on evidence that post-dated the state agency medical consultant's findings.

Accordingly, the Court finds that there is substantial evidence in the administrative record to support the ALJ's finding that the opinions of the state agency consultant, Dr. Butcofski, were entitled to "partial weight," and that his determination of the weight given to them was adequately explained and otherwise based upon a correct application of relevant law.

### III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Lenhardt was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate order follows.

Dated: March  28  , 2022

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge